STATE of Missouri, Respondent,

v.

LAKE CUNNINGHAM, Appellant.

No. SD 34470

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: September 27, 2017

Appellant's Attorney: Samuel E. Buffaloe, of Columbia, Missouri.

Respondent'(s) Attorney: Joshua Hawley, Attorney General, and Garrick Aplin,

Assistant Attorney General, of Jefferson City, Missouri.

WILLIAM W. FRANCIS, JR., J.

Lake Cunningham ("Cunningham") appeals the judgment of the trial court following his conviction for the class A felony of domestic assault in the first degree,[1] pursuant to section 565.072.[2] Following a bench trial, the trial court found Cunningham guilty. In one point on appeal, Cunningham challenges the sufficiency of the evidence to support his conviction for domestic assault in the first degree. Finding no merit to Cunningham's point, we affirm the judgment of the trial court.

**Factual and Procedural Background**

Cunningham challenges the sufficiency of the evidence to support his conviction for domestic assault in the first degree. "Our standard of review in a bench-tried case is the same as in a jury-tried case." *State v. Harrell*, 367 S.W.3d 122, 126 (Mo.App. S.D. 2012). "This Court must consider the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the [judgment], while disregarding all inferences to the contrary." *Id.* The following summary of the relevant facts is presented in accord with these principles.

Cunningham, Victim,[3] Victim's daughter ("S.A."), and Cunningham's father all resided together in the same residence. Victim filed for divorce from Cunningham's father, and his father was served with the summons and petition on February 9, 2015.

Michael Swearingen ("Swearingen"), worked with Victim at a nursing home for approximately a year and a half. Swearingen had been trying to sell a 1998 Pontiac Firebird, and Victim expressed interest in purchasing the vehicle for S.A. Swearingen and Victim agreed that Swearingen would come to the family residence on the evening of February 10, 2015, to allow Victim and S.A. to inspect the vehicle. Swearingen arrived at around 8:30 p.m.

When Victim and S.A. came out of the family residence, Victim observed Cunningham watching them from an upstairs window. Victim explained to Swearingen that the person in the window was her stepson. Victim and S.A. got into Swearingen's car, and the three drove to a local convenience store. Victim went into the store, purchased a few items including candy and three "little airplane bottles" of cinnamon whiskey, and returned to the car.

The three then returned to the family residence. Swearingen parked his car in the driveway. Victim, observing that her husband had not returned home yet, communicated that she wanted to take the opportunity to show Swearingen her camper, which she was interested in selling, and her newly rebuilt house. Victim, S.A., and Swearingen walked toward the camper, which was located approximately 15 to 20 feet in front of the house in the driveway.

At this time, Cunningham, observing that the three had returned, retrieved his father's loaded gun, a Ruger .357 Magnum, to "scare [Swearingen] off." Cunningham appeared outside the family residence with the gun in his hand. Victim, uneasy with Cunningham's stationary presence outside of the house, asked him, "[W]hat's going on?" Cunningham began yelling obsceni-

---

1. Cunningham was also convicted of the class D felony of unlawful use of a weapon, pursuant to section 571.030, but he has not appealed that conviction.

2. All references to statutes are to RSMo Cum. Supp. 2014, unless otherwise indicated.

3. Victim was Cunningham's stepmother.

ties, demanding of Swearingen "who the [f* * *] he was and what the [f* * *] he was doing there."

Cunningham said that Swearingen was not welcome, that the house was his "dad's territory[,]" and that he was "protecting" it. He directed Swearingen to "[g]et the F-out." Swearingen did not reply. Victim attempted to intervene and told Cunningham to stop. Cunningham, now within a few steps of Victim, S.A., and Swearingen, raised the gun and pointed it at Swearingen and S.A. Cunningham indicated that he "would like to kill all of you[.]" Victim "swerved in front of" S.A. when Cunningham pointed the gun at S.A., which redirected Cunningham's attention, causing him to again point the gun at Victim. Cunningham continued to demand that Swearingen depart, using coarse and profane language, while Victim yelled back at Cunningham. While Cunningham pointed the gun at Victim, Victim asked, "Do you really want to shoot me ...?" Cunningham replied, "I would love to [f-ing] kill you."

Swearingen turned around and walked back to his car, along with S.A. Victim, hoping to stall Cunningham long enough for Swearingen and S.A. to make it to Swearingen's car, grabbed the gun Cunningham was pointing at her.

Swearingen got into the driver's seat and started the car while S.A. stood by the front driver's side of the vehicle. Victim heard the car start, and satisfied that S.A. and Swearingen would be able to get away and call 911, let go of the gun. Cunningham said he wanted to kill Victim, and then hit Victim in the eye with the butt of the pistol, with such force it broke Victim's glasses. Victim stood there dazed for a moment, and Cunningham shoved her to the ground. Victim was laying prone with one elbow on the ground, while Cunning-

ham stood at her feet with the gun pointed at her head. Victim extended her left hand in front of her head where she discerned the gun was pointed. Cunningham pulled the trigger three times; the gun failed to fire on the first two trigger pulls, but discharged on the third, sending a bullet through Victim's left hand and wrist.

Hearing the gunshot, S.A. entered Swearingen's car. Cunningham approached the vehicle, pointing the gun at Swearingen and S.A. At that point, Swearingen drove off with S.A. in his car, and S.A. called 911. The two went to Swearingen's house, and then to the sheriff's office.

After Cunningham shot Victim, large amounts of blood flowed from Victim's hand and wrist. Victim applied pressure by placing her hand on her abdomen in an effort to staunch the bleeding. Victim pretended to be dead. Cunningham approached, waved the gun over Victim, and said, "Are you dead yet, I should shoot you again."

Cunningham walked away for a few moments, and Victim was able to call 911 on her cell phone. After giving basic information to the 911 operator, Victim saw Cunningham approach again. She said, "You know you don't want to do this you know, you're going to go to prison for the rest of your life, and I'm hurt really, really bad. And we need an ambulance." Cunningham grabbed the phone out of Victim's hand and told the 911 operator, "We need an ambulance, I just shot my mom, and she is hurt really, really bad." Thereafter, police and paramedics arrived at the scene.

Cunningham was charged, by Amended Felony Information, with domestic assault in the first degree (section 565.072), and unlawful use of a weapon (section 571.030.1(4)).[4]

---

4. The State also charged Cunningham with

armed criminal action, pursuant to section

Following a bench trial on March 21, 2016, the trial court found Cunningham guilty of both charges. On May 31, 2016, the trial court sentenced Cunningham to four years in the Department of Corrections on the unlawful use of a weapon conviction; sentenced Cunningham to 10 years in the Department of Corrections on the domestic assault conviction, suspended execution of that sentence and placed him on 5 years' probation; and ordered the domestic assault sentence, if ever executed, to run consecutively to the unlawful use of a weapon sentence. This appeal followed.

In one point on appeal, Cunningham asserts the trial court erred in issuing judgment and sentence for domestic assault in the first degree because there was insufficient evidence to prove beyond a reasonable doubt that he was attempting to cause serious physical injury when he shot Victim in the left hand and wrist.

### Standard of Review

■ Our standard of review in a bench-tried case is the same as in a jury-tried case. When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. This Court must consider the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict, while disregarding all inferences to the contrary. Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered. The reliability, credi-

bility, and weight of witness testimony are for the fact-finder to determine. It is within the fact-finder's province to believe all, some, or none of the witness's testimony in arriving at its decision. *Harrell*, 367 S.W.3d at 126 (internal quotations and citations omitted).

### Analysis

■ In his sole point on appeal, Cunningham argues that the trial court erred in issuing judgment and sentence against Cunningham for domestic assault in the first degree, in that there was insufficient evidence to show that he "was attempting"[5] to cause serious physical injury when he shot Victim.

"A person commits the offense of domestic assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to a domestic victim[.]" § 565.072.1. Per section 562.016.3,

> [a] person 'acts knowingly,' or with knowledge:
>
> (1) With respect to his or her conduct or to attendant circumstances when he or she is aware of the nature of his or her conduct or that those circumstances exist; or
>
> (2) With respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result.

§ 562.016.3, RSMo 2000.

■ While a defendant's mental state may be demonstrated with direct evidence, such evidence is seldom available, and may instead be proved with circumstantial evidence. *State v. Smith*, 502 S.W.3d 689, 696

565.072, but dismissed that charge prior to trial.

5. The record reveals that the Amended Felony Information charged Cunningham with "knowingly" causing serious physical injury

to Victim on the domestic assault count. *Ex gratia*, we proceed as though Cunningham had correctly challenged this charged culpable mental state.

(Mo.App. E.D. 2016). "In addition to reasonable inferences drawn from surrounding facts, a fact finder may reasonably infer a defendant's mental state from the act itself." *Id.* at 696-97 (internal quotation and citation omitted).

There was sufficient evidence for the trial court to find that Cunningham possessed a "knowing" mental state, per section 562.016.3(1), as to section 565.072.1. Here, there was evidence that Cunningham, on the cusp of a divorce action filed by Victim against his father, retrieved a gun for use in confronting Victim, S.A., and Swearingen. During the interaction, Cunningham threatened multiple times to bring about the harm the gun he was pointing at them could produce—that is, killing them.

After a brief struggle between Victim and Cunningham over the gun, Victim let go of the gun. Cunningham then expressed to Victim his desire to kill her, and followed up this threat by bashing Victim in the eye with the gun with such force it broke her glasses. Cunningham, with Victim standing dazed in front of him, shoved Victim to the ground. Victim stayed on the ground and Cunningham, standing at her feet, aimed the gun at her head. He pulled the trigger twice, failing each time to discharge the gun. With the gun still aimed at Victim's head, Cunningham pulled the trigger a third time, seriously wounding Victim in the left hand and wrist. Cunningham, having successfully fired the gun, walked over to Victim (who was covered with blood and attempting to remain motionless), waved the gun over her, and said: "Are you dead yet, I should shoot you again."

In his brief, Cunningham argues that Victim "was shot because of a struggle over the gun and not because of an intent to cause serious physical injury." This argument is unavailing. The evidence and inferences available from the evidence, viewed in the light most favorable to the judgment, *Harrell*, 367 S.W.3d at 126, show that the fight over the gun had already ceased when Cunningham hit Victim in the eye with the gun. Then, while Victim was dazed, he shoved her to the ground, aimed the gun at Victim, and pulled the trigger three times, successfully wounding Victim on the third attempt. Cunningham showed knowledge of what harm the gun could do by making threats to cause harm to Victim by using the gun, and then reaffirming his knowledge by threatening to shoot Victim again in an effort to kill her. The facts in this case are sufficient evidence to support a finding that Cunningham acted knowingly, per section 562.016.3, when he shot Victim. Point denied.

The trial court did not err in convicting Cunningham—there was sufficient evidence of Cunningham's knowing mental state in shooting Victim. The judgment of the trial court is affirmed.

JEFFREY W. BATES, J.—CONCURS

DANIEL E. SCOTT, J.—CONCURS